UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

AT GALVESTON

United States Courts
Southern District of Texas
F I L E D

JUN - 9 2023

Nathan Ochsner, Clerk of Court

HERBERT DARRELL HAY a/k/a
DEBOARAH NOE,

              Plaintiff,

VERSUS

UNIVERSITY OF TEXAS- - MEDICIAL BRANCH,
govnmental & Public Entity; OWENS
MURRARY, Vice-President(UTMB);
JOSEPH PENN, chief Psychiatrist;
PAULINE C. ODELL,psychiatrist;
JOACHIM K. DOZIER,GENDER SPECIALIST:
DIANELLE TSAMOURIS, Psychologtist;
AND,
TEXAS DEPARTMENT CRIMINAL JUSTICE--
CORRECTIONAL INSTITUTIONS DIVISION,
govemental and Public entity;
BRYANT COLLIER, Executive Director;
BOBBY LUMKINS,TDCJ-correcial Inst.
Division 'S Director; Lannette
LITHICUM,TDCJ's Health Div. Director;
MOISES VILLABOBOS, warden-Pack unit;
DANA SULLIVAN, Assistant Warden--
Pack unit;

                     DefendANTS .

No. _____

# C O M P L A I N T

1.  PLAINTIFF <u>HERBERT DARRELL HAY</u>[1] a/k/a DEBOARAH NOE( "Plaintiff Ms. Noe"), is a Transgender woman with a female gender identity, and incarcerated at the TDCJ- Pack Unit, in Navasota,(Grimes County, Texas. Ms. Noe brings this lawsuit against UTMB &TDCJ(ADA, AND ADAAAA, and the FED. REHABILITATION ACT OF 1973) and defendants <u>MURRARY</u>, <u>PENN</u>, <u>ODELL</u>, <u>TSAMOURIS</u>, <u>Collier</u>, <u>Lumkins</u>, <u>Linthicum</u>, <u>Villabobos</u>, and <u>Sullivan</u>, and Dozier,

2.  MS. Noe suffers from GENDER DYSPHORIA, a rare, but serious Medical condition, and DISABILITY.

#.  The standard of care for treatment of gender dysphoria established by the world PROFESSIONAL ASSOCIATION FOR Transgender Health(" WPATH); AMERICAN MEDICIATION,("AMA"),THE AMERICAN PSYCHOLOGICAL ASSOC-ATION("APA")and other major medicial associations & mental health assoc-iations professional organizations is to live consistently with one's gender identity through counseling CROSS-sex horomes therapy, <u>gender reassignment surgery</u> services, and the social and legal transition to sex associated with a prisoner's gender identity.

-- 2 --

---

[1]due to Plaintiff's Gender Dysphoria, she uses her feminine Name: Ms. Noe hereinafter, due to TDCJ's Refusal to even acknowleage Her Femineine name, but Her legal name is <u>Micheal Darnell Luke Noe</u>, but TDCJ's only

4.  Ms. Noe has long ago undergone(PARTIAL)the processes of Gender transition and is a woman.

5.  To avoid debililating psychological dysfunctioning and distress, Ms. Noe must be able to live consistently her female gender identity like any other woman.  Rather than support MS. Noe's female gender identity.  Defendants(COLLECTIVELY)have underminied ms. Noe's ability to live as a woman, and in direct conravations of established treatment recommendations, and made a ban on all surgerical services, and transition(living fully as a woman)due to her sex or female gender identity. Defendants <u>UTMB</u> and <u>TDCJ</u> have, by tacit agreement conspired to prevent her from living as a woman despired her incarceration in a <u>male</u> or <u>female</u> prison based soly on her birth sex) or her female gender identity, or transgender status, and her gender dysphoria,(DISABILITY).  These defendants UTMB AND TDCJ have denied her reasonable(requested) accommodiations per the grievance system. They haved forced her to lived in all-male units(due to her birth sex) or her transgender stats.  They have sujected her to male correctional officers stripped NAKED, AND BODILY CAVITY SEARCHES) IN THE PRESENCE OTHER TDCJ INMATES OR THIRD PERSONS NOT NECESSSARY TO THE SEARCHES. (OTHER MALE OFFICERS NOT SHAKING DOWN). THEY(DEF"S <u>UTMB</u> & <u>TDCJ</u>) employees ,HARASS HER, REFUSE TO USE HER FEMININE NAME, REFUSE TO USE FEMALE PRON_ ouns, refuse her privacy showers, or the equal protection given infirary inmates (whom get a guard when the shower, but the plaintiff gets no protection from the wandering inmates, SSI-janitors, or other inmates like kitchen workers.

ind.! Here Deruce Hay, ler plerdepseyos as Hebel Duell Hay #2200002 herein. (Due to her gender Dysphoria, Plaintiff uses the feminine nom Deborah Noe, or Ms. Noe, and female pronouns, ("She","her" and Ms. Noe, or plaintiff herein).

6.   In short, Ms. Noe is a women being forced to live,eat, defeated, sleep, and shower with men, and without appropriate reasonable accommodiations that she needs for the treatment her gender dysphoria.

7.   Ms. Noe, plaintiff thereby brings claims for violation of the ADA, 28 U.S.C. §12101, as amend by the ADAAA, 28 U.S.C. §§12131-12134 et seq., and FED. REHABILITION ACT OF 1973; 29 U.S.C. §701 et seq. by violation of the"FRA. "The civil rights act of 1964, and the Fourteenth amendment of the U.S. Con-stitution(both the equal protection Clause and the DUE PROCESS CLAUSE of the Fourteenth amendment, to U.S. Constitution.MS. Noe seeks injunctive, nomial, and any other relief avaiable, and any attorney fees allowed under 42 U.S.C. §1983.

## JURISDICTION AND VENUE

8.   This District Court has jurisdiction over these claims under 28 U.S.C. §§1331, 1343, as the elements of each claims are set out hereinafter(below).  Many of the claims arise under FEDERAL LAW.SEE, supra ADA, ADAAA, FRA, Civil rights act of 1964, and the Fourteenth amendment of the U.S. Constitution. As well as EQUAL PROTECTION CLAUSE AND THE DUE PROCESS Clause.

## PARTIES

9.   PLAINTIFF is HERBERT DARRELL HAY, a/k/a DEBORAH Noe( "PLAINTIFF," "MS. Noe")(SEE NOTE ONE)].  MS. Noe has been held

-- 4 --

2.  Venue is in Galveston County, Texas whose under 28 U.S.C. §1391, where the majority of events took place ons on liberdians in Galeston County, Texas

### Parties

9. PLAINTIFF HERBERT D. HAY, TDCJ#263672 a/k/a DEBORAH NOE(" Plaintiff","Ms. Noe")she is incarceration at the TDCJ's PACK FACILITY, IN NAVASOTA, (Grimes county), TEXAS.  She has been held at this facility, since 2018 to present date of this complaint.  She is a qualified disability under ADA/ADAAA, and Rehabilition Act of 1973.

10.  Defendant UNIVERSITY OF TEXAS- -MEDICAL BRANCH,("UTMB"), a state governmental and public entity within the meaning of Section 504 of Rehabilitiation Act of 1973, 29 U.S.C. §701 et seq.See 42 U.S.C. §2000d-(7) waiver of soverign Immunity in Section 504 cases.  IN the capacity of a contractor of services to all TDCJ's inmates. She is a recipient of federal financial assistance

11.  DEFENDANT Owens MURRARY, is in the capacity of vice-president of UTMB/CMHC.  IN THAT CAPACITY, Mr. murrary is Personally responsibilly for the hiring of completent professionals trained in inter-sex, lisbian, gay, Bissexual, Transgender, and gender non-conforming persons, and experienced in serving that particular population,  He is responsible for their hiring, training, and conduct.  He is personally responible with ensuring that all TDCJ's male and female inmates received the equal protection of the laws, and minimumal due process in the medicial treatment of all TDCJ's inmates, including plaintiff.He is re-co-creator with on information and belief, with L. Lithicum, and it's implementation as the CMHC POLICY MANUAL, AND SPECIFICALLY G-51.11.

-- 5 =--

12. Defendant Joseph Penn, in the capacities of chief,
psychiatrist of utmb, and (on information and belief), after resonable
invesigation, is the current codirector of the TDCJ Gender Clinic, in
all transgender woman made six months trips for testing, and to meet
with phyisans whom are trained and experienced in intersex, lesbian,
bisexual, trangender and gender non-comforming persons, and treatment,
treatment plans, that are individualized for their special needs. He
is responsible for the review, discipline, and supervision of profess-
ionals, hired, and to ensure that all trangender women treatment plans
are full-treatment plans meeting their individualized needs for treat-
ment of their gender dysphoria, and this is done by charts reviews. He
is the ultimade policy-maker for the TDCJ Gender clinic, being the
only surving co-chair, As DR. GORDON, HAS LEFT UTMB EMPLOYMENT. He is
sued in his personal and official capacities.

13. Defendant Pauline C. ODELL, is a treating psychiatrist.
In that capacity, she  has personally particpated in the treatment of
plaintiff, and is responsble for the psychiatric, or psychtropic drugs That
she is currently taking for her suffering serious medicial needs, of
depression, anxeity, fear of strong urges to self-castrate, or committ
suicide.  Plaintiff has a past history of a special needs inmate,
whom has a past history of self-muliation, or suicide thoughts or attempt-
s to kill herself.  HER TREATMENT CONSISTS OF PSYTROPIC DRUG, BUT DO NOT
TREAT HER GENDER DYSPHORIA E.G. the confict that has severe symptoms.

-- 6 --

14.   Defendant <u>JOACHIN K. DOZIER</u>, Gender specialist, treating provider, nurse practioner.  In that capacity, she is the treating provider seeing her on DSM(telemedicene) conducted from GALVESTON, GALVESTON COUNTY), Texas.  (She) has refused all evaluations citing TDCJ's [mo. Dozier] blanket refusal to perform any surgerical services for transgender woman.  She has refused to referral her to trained and ~~skilled~~ professions in <u>intersex, lesbian, bisexual, trangender, and gender non-conforming persons</u>., and experienced in treating them, and creating treatment plans,  Hers consist mainly of blood testing, cross-sex hormone therapy she has initially ask for genital reassigment surgery service, tran-sition(LIVING FULLY AS A WOMAN)(WHICH IS THE MAIN GOAL FOR TRANSITION OF POST-OPS, ~~TRANSEXUALISM~~ Transgenity)(MALE TO FEMALE).  Ms.  Noe's reasonable, and appropriate reqests for accommodiations have been Denied by DR, GOrdon, whom told her TDCJ will not pay the costs associated with gender dysphoria.  MS, DOZIER , also repeatedly denied the reasonable request for accommodiation.  Both MRS GORDOM AND DOZIER's repeated denials of have diectly and approxmately resulted from their statments to her,[which are offered not to prove the truth of these statements, but only offer-ed to prove that they were said.].(Fed. R. of EVID, rule. 201 She also precribed her cross-sex female hormones ESTRDIOAL (MILLGRAMS INJECTIONS) and testron inhibitors[MEDROXYPROGESTERONE](that reduce, and causal coe-nection to the physical reduction in the size of her testes.And Lead to inferity of Reproduction impairment.  SHE has been issued female bras, but

--  7  --

Mrs. Dozier has neglected her testing(blood work)for one year, and has refused to allow, Plaintiff evaluations, by trained and experienced professionals whom are recommended by the Star- tard of care in the 7th edition of the Wpath.  The result of this is that she has suffered unnecessary and wanton infliction of pain and suffering to her present and future health and safety.(the real possibilty of physical injury or death; revealed by her suffering and pain of Depression, anxeity, and fear of strong urges to self-castrate , or suicide.  Sometimes these become so overwhelming that she as reqired Restrictive housing, and twenty-four hours watch,  Only through her resilience she has been able to overcomes those strong urges to self- castrated herself.  Her medical Plan is limited by the banned surgery service.  She has experienced these disorders, a serious medical need, and it has severely impaired her ability to basic life activities, and her sole claim is that TDCJ will not reasonabley accommodate her requests.  But no reasons are given for the denial of individualized treatment plan.

15.  Defendant Dianelle tsamouris is a psycholdist working seven different unit, and since been moved to other duties after filing a OPI(offender PROTECTION INVesigation)on his behalf resulting in a serious disagreement with DANA SULLIVAN).  She is to provide supportive services under G-51.11 CMH.

-- 8 --

She(Tsamouris)is not trained or experienced in treating
intersex, lesbian, bisexual, transgender, or gender non-confor-
ming persons as recommended by Wpath.org's Standard Of Care,(
7th Edition)  But she tried to do so.

16.  Defendant Kolton Stover in the capacity of practice
manager(UTMB),  In that capacity, he is personally responsible
for the implementation of H-61.1 and G-51.11 Both regulations
are based on state law(STATE-CREATED RIGHTS), GOVerning the
privacy of transgender status, and treatment of trangender woman.
He deprived plaintiff of doctor --patient information of Gender
Dysphoria, by releasing that information without taking any
steps to protect her from such disclosue of such information from
her confidentiality of that information.  Thus, violating by clearly
established law.  Plaintiff exhusted her state-administrative
remedies by filing step 1 and 2 (both denied), exhausting this by
all avaiable remedies.  On information and belief, Defendant has
violated, by personally conducting informally remedies, includ-
ing I-60's query through the regular mail.

17.  Defendant TEXAS DEPARTMENT OF CRIMINAL JUSTICE- -
CORRECTIONAL INSTITUTION DIVISION, a state of Texas, And, a
PUBLIC entity.  IT is a recipticent of Federal financl assist-
ances within the meaning of the Rehabiliation Act of 1973, See,
42 U.S.C. § 2000d-7 ("states that states recieving Federal finan-

-- 9 --

18.   Defendant BRYANT COLLIER is the Executive Director of TDCJ, And, in that capacities is resonsible for the Administrate Directives and the CMHC's Policy Manuel, He is the highest policy-maker, and the highest officer & leader of TDCJ's guards, employee, and, contractors (UTMB).  He is responsible for the day-to-day operation of TDCJ, and has the power to delegate those powers to BOBBY LUMPKINS, Wardens VILLALOBOS, AND SULLIVAN, and it's Divisions. He is the ultimate responsible Hiring of guards, emp-loyees, and contractors, and is responsible for their hiring, training, discipline of all TDCJ's guards, employees, and contrac-tors for TDCJ. He is sued in his official and personal capacties.

19. Defendant BOBBY LUMPKINS, Is the director of the Correctional Institution divisions, and their directors and deputy director. In that capacity,; He is responsible for the security, humane treat-ment of all TDCJ inmates; he is responsible for the day-to-day operations of TDCJ and all its divisions.  He is responbile for Descryto Transphut He is sued in his personaL CAPACITY AND OFFICIAL CAPACITIES.

20.   Defendant LANNETTE LINTHICUM is the Director of the HEALTH service Division of CID VISION? On information and belief; after reasonable investigation; Defendant linthicum is the Step 2, (RESPONSIBLE FOR ALL MEDICIAL GRIEVANCES) (approve,) AND SHE HAS DENIED THE reasonable accommodiates requested by plaintiff.  She is sued in her (LINTHICUM) personal and official capacities. Responed,

-- 10 --

21.  Defendant <u>MOISES VILLALOBOS,</u> IS THE Warden of Pack unit(TDCJ), and in that capacity, He is responsible for the day-to-day operation of Pack unit, as delegated by COLLIER, AND LUMPKINS, and meets daily with the Pack unit medicial team.  He is resbnbile for Implementation of G-51,11, H-61.1, And AD-04.17(REV. 5), AND, AD-04.68.

22.  Defendant DANA Sullivan is the Assistant Warden, of Pack unit. At all times mention in this complaint, He held the rank of major; then Assistant Warden.  He is normally the first level responser at step 1; I-127).  HE has denied Step 1 grievances.  He is sued in his personal and official capacities.

23.  EACHdefendant is, on information and belef, a resident of state of Texas.  Each defendant(COLLECTIVELY)'s acted at all times in this complaint under the color of state law.  ONLY <u>UTMB</u> AND <u>TDCJ</u> ARE SUED UNDER THE ADA, ADAAA, AND Federal REHABILITATION ACT of 1973, ~~CIVIL RIGHTS ACT OF 1964,~~ Are sued for violation of THE FOUR-nteenth AMENDMENT TO THE UNITED STATES CONSTITUTION.( of the EQUAL PROTECTION CLAUSE, AND THE DUE PROCESS CLAUSE) .The individuals defendants are suied only for nomial damages of $1.00(one doll-ar).  Defendants <u>UTMB</u> are sued for whatever relief he shows himself entitled to;  PREMLINARY INJUNCTIVE RELIEF IS REQUESTED.

## FACTUAL ALLEGATIONS OF COMPLAINT

### GENDER DYSPHORIA

24.  GENDER DYSPHORIA, AS DEFINED BY THE FIFTH EDITION OF THE

of  the Diagnostic and Statistical Manual of Mental Health disorders("DSM-V"), is a medicial condition in which there is a marked incongruence between one's experienced or expressed gender and(one's ( assigned sex at birth) lasting for at least 6 months and manifested through at least  two of the following  symptoms:

a.  a marked incongruence between  one's experienced/expressed gender and primary and/or secondary sex characteristics.

b.  A strong desire to be rid of one's primary or secondary because of a marked incongruence with one's experienced / expressed gender.

c.  A strong desire  for the primary and/or secondary sex characteristics of other gender.

d.  A strong desire to be the gender (or some alternative gender different from one's assigned gender).

e.  A strong desire to be treated as the other gender( or alternative gender  different from one's assigned gender).

f.  A strong conviction that one's has the typical feeling and reactions of the other gender (or some alternative gender different from one's assigned gender).

25.  A person with Gender Dysphoria experiences clinical distress from having a gender identity - - an internalized sense of being male or female - - that is differentthan his or her assigned sex and gender at birth.

26.  Gender Dysphoria is associated with high levels of

-- 11 --

30.   Being treated as a boy by her parents, gave her an insight into the experiences of being treated as a male by TDCJ's blanket ban on all transgender services and programs, or other activities in TDCJ, including being treated as a male inmate in an all-male prison facility, but that has not stopped Ms. Noe from experienceing and suffering from serious impairment to her health and physical safety.  Such as suffering from serious depression, anxeity, strong urges to self-castrate(self-muliation), or suicides's attempts, when they become so overwheming that she has to seek assistance from the mental health dept~~ment~~.  In which, in 2007, upon arrival in TDCJ, she told them she was a transgender woman, and had a feminine Name of Deborah Noe, (as she legally change her name to Michael Darnell Luke Noe  , but went by Debbie Noe. She has lived as a woman for over a year in her teens, and as an adult[but almost five decades ago', she sought from TDCJ's Mental Health Department; she asked psychologist Kerribe, and doctor Howard, to approve her for sex reassignment surgery services, or programs, but they denied those requests and treated her as if she was crazy.]).  They would only give her psychtrropic drugs, which they are still doing to treat her depress- and other serious mental hedth issues in TDCJ.  She was not Diagnosis with gender dysphoria(previously it had been(Gender identity disorder), but now Gender Dysphoria.

MS. Noe's Experience As A TDCJ Prisoner

31.  Plaintiff Returned to TDCJ, after parole on
December 07, 2007, and ~~Subsequently~~ transferred to the Pack
unit in Navasota, (Grimes County), Texas. She is eligible
for parole in 2025. not

32. As previously stated,  She entered TDCJ again, in
2007, And she informed TDCJ's staff that she was a transgender woman.
She also told them that she had changed her name in a State
of  Texas district Court.  Her driver's Lic. and Federal
Social Secuity Card was in that name, and on her committment
papers.  She ask to be called by that name.

33.  During her time confined at Pack Unit, she was
Classifi/ed  as a Medical transfer due to her COPD, and
other illnesses(Heat Restricted, Class Member in(Keith
Cole Vs. Collier)class action).  She was given a Single-
level Facility, so she was transferred to Pack Unit in
March 14, 2014.

34.  At Pack Unit, she was assigned to a dorminatory(
Alpha Section, Dorm 1. Like most writ writers, she experienced
discrimination In disciplinary problems like most of
the writ writers subject to But unlike most writ writers, the
plaintiff was dependant upon prison officers to
protect her, but they also discriminated toward her, due
her transgender status, or birth sex(e,g. she was
assigned to all-male units(due to her birth sex), or
genitalia, [male sex), under the outdated sex stereotyping

--  14  --

by prison staff/defendants(UTMB & TDCJ ), FORCING HER to
live, sleep, shower, and use the restroom with TDCJ's inmates,
without any special precaustion being taken by (defendants(collect-
ively) after being assigned to general population in all-male
facilities In TDCJ.

   35.   In March, 2020, After the ~~ninth month~~ (march 2020),   TDCJ was
placed on systematically lockdown(all units)and all recreation
(indoor and outdoor) was denied to all inmates,(for a total of
seven months, THEY Were confined by TDCJ to a seven by 10 squar-
ed-feet.(FOR A TOTAL OF 47 sq. feet)   All medical transfers were
stopprd to the TDC Gender clinic in 2020.   After that point
all TDC GENDER CLINIC APPOINTMENTS WERE CONDUCTED USING, WHAT
I CALL(DSM) APPOINTMENTS(TELEMEDICENE)from GALESTON, (GALVESTON
COUNTY, STATE OF TEXAS. On 03/11/2019, plaintiff, Ms. Noe
was given a comprehensive medical exam by TWO PHYSICANS, Whom
diagnosis her with suffering from GENDER DYSPHORIA.These
professionals were trained, and experience in treating, intersex,
Lesbian,Gay, Bisexual, transgender, and gender-non-conforming
persons, as directed by Wpath.org's Standard of Care. See,
(Exhibit seven) attached to Appendix One, attached to complaint.
Ms. Dozier Advised the plaintiff that the sole basis of her
deial each time she was seen, based on an Administrive policy,
[on information and belief), after reasonable investigation,
WAS LOCATED IN THE 2019 FORMULARY). [this policy is based on
~~wether~~ whether or not it was life-threatening, or elective].   Ms. Dozier,

EACH TIME THAT SHE SEEN, she WOULD DENY THE REASONABLE ACCOMOIATT-
IONS REQUESTED BY THE PLAINTIFF, using the TDCJ ORIENTATION HAND Book
~~See, EXHIBIT 1, Attached to Appendix ONE.~~ She was denied by
ms. Dozier, for administrative reasons, not medicial reasons
all referrals to a phyican(two for sex reassignment surgery's
services.  This denial was due to Ms. Dozier's reliance on
this policy, and she repeatedly refused to made those referals, or
conduct the evaluations medically necessary under the WPATH.Org.'s
STANDARD OF CARE.  See page ___. Attached to Appendix ONE, Ex. 7
Plaintiff had started filing GRIEVENCES From the Denial of Dr.
Gordon's denial on March 11, (A Common blanket ban on all non-
life-threatening ,or elective surgery services, or Transition,
(Ms. Noe wanted from her arrival in 2007, and these services, or
programing[that had started five decades ago with a request to
Physhologist Kerribi, and denied by Dr. Howard in 1980.  She was
given only psychologist therapy.  She as a serious past history
of self-mutiations, and suicidical attempts befor Panle in 2004.

36.  Ms. Noe suffers from, after that point, serious medical
mental health needs to treat her(Depression, anxeity, strong
urges to self-castrated herself, and these urges would become
so overwhelming, and impair her basic life activities(resulting
in restrictive housing and 24 hrs. watch, in pain causing, and
phyical pain and suffering that serves no penalological interest
in a strpped cell with no bedding, mattress, sheets, blankets,
or suicide mattress--resuling in physical pain and suffering on a
cold steel bunk.

37. Upon her return to Pack unit in Feby., 2018, She has MAINTAINED a request for surgery services, and transitioning programing. This was denied by Mrs. Gordon, nd Ms. Dozier or Provider treating physican, She timey appealed Filing a step 1, and step 2 grievances, exhustion her administive remedies, every year after that until 2022. Ms. Dozier's denials of evaluations, or referrals, were due to TDCJ's policies, practices, in implmentation of and ban on her efforts to have reasonable accomodations requested through th TDCJ orientation handbook, page two. See, appendix ONE, Ex. 3 That says that all ADA claims will be filed through TDCJ's administrative grievance system.

38. During the lockdown, Plaintiff was denied showers(by MR. WILLIAMS, AND LT. Brown), Inmates were allowed to come into the shower area, which has no door, just and opening into the showers, this allows wandering males, janitors, to observe her dressing or undressing, or showering, where they can observe her naked with breast, and other genitalia exposed. She filed step one(I-127, & step 2(I-128) exhausting administrative remedies. Each time that it occurred, or reported it to Ms. Shields, safe prison/ PREA manager. They were denied on the merits and all reasonable accomodiations were denied. Mr William and Lt. Brown refused to allow her to shower in the infirmary, during the lockdown. Instead Mr. williams tried to get Ms. Noe to shower with other inmates; telling her "that's okay, they won't look at you!" When Plaintiff other inmates came into the shower as he did not secure the door, (Preventing other inmates from coming in the showers) while she showered, plaintiff complainted to Lt. Brown, and he refused to take any action

-- 17 --

39.  Plaintiff discussed this with TDCJ's staff, and
repeatedly complainted each time that it occurred, to
exhust her Step One and step 2 Grievances, and TDCJ's staff;
as well, as her corresponding fear of showering under unsafe
conditions.  Since these events where reoccurring(defendants
complaints of injury and a serious risk of sexual abuse
or assult could occurred.  Defendant complainted of part-
officers of discrimination by allowing it to reoccurred.

40.  When she was housed on different Units(la Blanc,
and Travis County Jail facilities), she was given privacy
showers out-of-the-presence of TDCJ inmates, but at TDCJ=
Pack unit, the discrimintation was still reoccurring, that
she had to complains repeatedly. In response to the over-
whelming stress of not being able to shower safely, she comp-
lainted to the psychologist Tsamouris about the unsafe
conditions that security staff was subjecting her to
and that if she continued to be mistreated by staff,
she feared hurting herself.  She had been repeatedly denied
reasonable accomodation due to her gender Dysphoria, that it
was creating an unreasonable conflict and anxeity, or
thoughts of hurting herself by castrating herself.

41.  TDCJ later provided a, what is called a PREA
SHOWER CURTAIN for transgender woman to use.  However, un-known
TDCJ inmates have removed peices of this shower curtain. Leaving

--  18  --

it ill-repaired, where it could not cover her body while
she showered, and exposing her to inmates coming back and seeing
her genitalia.  Some of these inmates physically threatened her
and she reported it to the security correctional officer on
duty, whom did not logged it,or report it to their supervisor,
however, plaintiff reported it to Ms. Shields, and filed a
step 1 and step 2 grievances and they were denied at both levels,
and since these events were reoccurring all defendants had
the power to take remedial measures to stop it, but didn't.

42.  The opaque section of the shower curtain ,how-
ever, does not line up, or would drop away while she was
showering, allowing wandering patients whom doors(were left
open by nurses allowed)most inmates coming by to see her breast
and most of her naked body, including her genitalia.  Simply
put, no curtain is sufficent to protect her privacy or
safety while showering as long as activities occur while
she is showering, and no guard is present, as allowed
for the infirmary inmates(the males that go out of their
way to observe her in the showers.

43.  Ms. Noe's inability to shower without the presence of
men has exacerbated her gender dysphoria, and disrupted her treat-
ment.

44.  Although some TDCJ CORRECTIONAL OFFICERS REFER TO
MS Noe as a female and properly use her chosen female name
most do not, particularly like Dana sullivan, whom was

informed by Ms. Tsamouris that he should refer to her using a
chosen female name, and he refused to do so, and he is a leader
of correctional officers[major]and, later assistant warden).He
also refused to use female pronouns when talking to or about her.
Indeed certain correctional officers like Ms. Mitchell, told her
as long as she had a dick, or penis, then no one is going to
reconised you as a female. (or words to that effect, offered
only to prove it was said, not the truth of the statements).

45.  Ms. Noe is also verally harassed and physically threated,
By TDCJ inmates because she has gender dysphoria.  TDCJ prisoners
have entered her cubile on the dorm, and deride her and try to
intimdate her, others fondled her, because they are not enough
staff assigned to her dorm, or they have been re-position
illegally in violation of the clearly established law, that
a resonable person would know violated the plaintiff's civil
rights.  They have been written up only once for entering plain-
tiff's cubile, In the last six years.  To avoid these threats
or har assment, Ms. Noe often skips meals or avoid group activities.
She is often avoids the back dayroom because it is so dark back
there, and she has been repeatedly proposition for sex, or
confronted with threats of violence for being a snitch.  In short,
her daily life activities are significantly impaired by def-
fenants inaction or acts.

### Ms.  Noe's Gender Dysphoria Treatment Plan

46.  Ms. Noe was seen by TDCJ's contracted Health Care

-- 20. --

provides, Ms. E. Gordon, treating Physican, and other physican
trained and experienced in; intersex, lesbian, bisexual,
transgender, and gender non-conforming person as recommended
by the 7th. Ed. of the World Health Association on Transgender
health, (WPATH.Org's Standard of care, ("SOC").  See exhibit 7,
attached to Appendix One.

47.  On March 11, 2019, her initial mental health apprisal was
conducted by Ms. Dozier, np in (Dec., 2018), and followed up by
two Phycians(dr. Gordon, a family Physican.  She explained
that while she recognize at a early age that she was different
than most boys, as she prefered dolls and dresses, Her family
did not agree and this lead to an early conflict with authority,
teachers, and the police.  It lead to antisocial behavior that
lead her family to beleive that she was mentally ill, But it
wasn't till 1980, that she requested a sex change and implants,
but was only given psychotropic drugs to treat her symptoms,
instead of the cause(GID -- GENDER IDENTITY DISORDER), And,
she was Diagonsis with Gender Dysphoria, by Dr. Gordon, and
another phsysican.  She made the request to dr. Howard and Pych-
ologist Kerribi.  All treatment was denied except for psycholo-
ical therapy.  Five decades later, due to changes in policies,
Her prcess was reconsidered and she was diagnosis with Gender
Dysphoria.  Wpath recommendation that only qualified experience
and trained professionals evaluate her for a sex change surgery
services, and transition programing, however this was repeatedly
denial by Ms. Dozier, Whom cited TDCJ's ban on paying for trans-

gender health care, And on information and belief, after
reasonable investigation, plaintiff has learned that the
policies appeared in the Formulary, 2019.  It basically says
in lay terms, that all non-elective threatment that is not life-
threatening will be denied by TDCJ staff.  While this would
appear to be netural, it is applied in a disparitive manner
to Intersex, lesbian, bisexuals, transgender, and gender non-
conforming persons, and such policies are discriminatory to the
plaintiff's disability of gender Dysphoria.

48.  After reviewing Ms. Noe's mental health and informing
her of the treatment recommened, but not limited to that
treatment,  Ms. Noe was started on cross-sex female hormones
and other testr.—limiting drugs by Ms. Dozier in Pill form. how-
ever, Dr. Gordon at the second evaluation, change this to
injections of estrgen, 1 cc.  She was also issued bras's Passes.
Due to the growth of breast, softing of skin, and re-positioning of
fat cells, around her body that femized her appearance.  This
had a negative effect on the TDCJ's inmate population that in-
creased the inappropriate touching by staff members and TDCJ's
male inmates.  She reported these incidents by filing step 1 and
step two greivances, when she recieved the denials in TDCJ's
responses refusing to accomodiate her request.  Her treatment
plan did not change much in the next five(5) years. It consisted
of no goals or recommendations for individualized treatment plans.
but not due to the Plaintiff's efforts to get TDCJ to comply
with reasonable adjustments to her Plans.  She requested at each
session of her gender clinic appointments(until 2022.  She was
repeatedly told that they were denied due to TDCJ's refusal,

to pay the costs, while similairly-situated ‸inmates ‾recieved (non-Tiangendes Women) such‸services from the surgery services provided to TDCJ's inmates(both male and female), the denial of reasonable accomidations was due to TDCJ's discriminatory, intentional, and knowingly violation of established law, under both federal law(ADA/ADAAA, Fed. Rehabilitation Act of 1973, and the Forthteen amenments [Equal Pr̶tection Clause and Due Process Clause of the U.S. Constitution. Ms. Noe throughly investigated her Gender Dysphoria diagnosis, and obtained copies of the ] WPATH.org's STANDARD OF CARE, and instructions on transition, (living fully as a woman, by obtaining Guides by Experts)‾⁄‾ .

Her Plan also referral to the Unit Mental health dept, for supportive care by a psycholgist·She had a problem getting that help, as none of the psychologist were trained or exper- ienced in intersex, lesbian, bisexuals, transgender, or gender non-conforming persons. Her primary Care clinicion was Ms. Dianelle Tsamouris, UPC; however she had no training in such area's Thr̶ogh she had a double Master's degree, it was in another area o̶f mental health, And she only offer to give her therapy‸ from a list of illnesses that had nothing to do with treatment of Gender Dysphoria, but only treated the symptoms.. She referral her to Mrs. Pauline C. Odell, Psychiatrist, whom treated her symptoms, not her Gender Dysphoria.  As a result, initially, plaintiff complained of the lack of experienel̶and skill in treating GD, and because it excerbrated her GD, But due to her training, skill, and interest, working with Ms. Tsa-

-- 23 --

mouris.  She became ~~and~~ advocate.

49. As a Class of one, the plaintiff would assert that
TDCJ's policies [IN THE FORMULARY 2019, and ~~UTMB~~ UCMH policy Man-
ual, 51.11 as ~~implemted~~ Implemented by UTMB and TDCJ, has had a disparate
impact on discrimination toward the transgenders status that
is irrational, and unreasonable, which by tacit agreement be-
tween TDCJ and UTMB, UTMB has deprived the plaintiff of
medically necessary Mental health treatment AND PROGRAMING,
SERVICES, áND activities that violated professional standards
of care.  See, 7th Edition of WPATH.org's SOC.

## Ms. Noe's requests for accomiations for her disabilities

50.  Ms. Noe requested from TDCJ and UTMB to made app-
rotated, accomodations for her gender Dysphoria in order to
prevent a serious risk to her health and safety, that could
result in serious injury or death to her future health and safety.
This dicrimination due to her disabiltied resulted in the
~~unobnoxy~~ UNeccessary pain and suffering.  Ms. Noe complained about her
need for additional protection in general population, that TDCJ
and UTMB refused to provide.  This was in response to her
need for special tranportation, that was denied by UTMB and
TDCJ, because no investigation was conducted by Defendants.

51.  Defendants UTMB offer no Remedial measures to protect
her from sexual assualt or abused or harassment.  Moreover,
Neither UTMB offer to give her individualized treatment for
séious medical needs, by simply deferring to TDCJ, and
refusing her requested referrals, or evalutions for her
serious medical needs, and disabilities.

## CAUSES OF ACTION

### COUNT ONE

### ( ADA/ADAAA-DISCRIMINATION/FAILURE TO ACCOMODATE)
(TDCJ & UTMB)

52.  Ms. Noe, plaintiff incorporates by reference the preceding paragraphs of her complaint as though fully set forth herein.

Defendants UTMB AND TDCJ have violated the ADA, 42 U.S.C §12101 et seq. as amended in 2008 by the ADA Amendment Act of 2010(effective date), SEE, 42 U.S.C. §§ 12131-12134, et seq, by discriminating against Ms. Noe on the basis of her disability. The discrimination includes:

a.  Refusing her medical evalutions by trained and experienced Professionals with intersex, lesbian, bisexual, transgender, and gender non-con forming person as reccomended by WPATH.org's STANDARD OF CARE, ("SOC"), being with Dr. Gordon, and other physicans.  Nurse Practioner-provider (Dozier) claimed in the last interview(Exam)(six month review), She refused to perform each time she seen her, excepted the last, then she said that she could do the evalutions; but each time that she was seen, ms. dozier, she refused to exerice that discretions saying that "THAT TDCJ WILL NOT PAY FOR THIS." (An exception to the general hersay rule,(As plaintiff is not trying to prove that it is true, but only that she said it to the plaintiff).  She also refused to referral her to two physicans recommended by the WPATH. org's SOC. See exhibit 7, attached to Appendix One.

-- 25 --

b.  Refusing to transfer the plaintiff, *to a female Unit,* or to put him in "safekeeping" in general population. [2/] This denial by Dana Sullivan, major(At the time of the incident, and the assistant warden of Pack unit the other times).  They initially, ( in 2007, Determined her gender by (her birth sex, or genitalia). While they claimed in step 1,'s Responses. That they made a PREA INDIVIDUALIZED EVALUTIONS, BUT THAT WAS PRETextual as the plaintiff was there, and Mr. Sullivan did not mentioned any PREA individuals, and he was only concern ~~wether~~ *whether* or not that plaintiff could prove an immient potential attack on his person.  While plaintiff proved that a series of physical attacks occurred, (on 02/08/2020, and again on 11/06/22), and that he testified that plaintiff had been sexually assulted twice in 2020, and she was being sexually assualt(by Mrs. Brown) twice in 2021, and 2020, and by Mrs. Woodard, by touching her breasts.  (Each incident they took the word of the officer, over the inmates' word), each time none of the witnesses were interviewed during the investigations).  Defendants have refused transfer AT STEP 1 and 2 Responses, and denied requested accomodations.  They refused his reasonable requests for accomodations, by transferring her to a female unit, or placing her in safekeeping, or P.C.

c.  Refusing to train TDCJ Staff, and employees, and contractors on how to appropriately, treat, and communicate with individuals with Gender Dysphoria.

--  26  --

d.  Refusing to use her chosen female name when addresses or referring to Ms. Noe;

e.  Refusing to use female pronouns when addressing or referring to Ms. Noe;

f.  Allowing male correctional officers to perform, on a daiy basis, stripped searches(NAKED) in the front of other TDCJ's inmates, and allowing wandering  patients, WHOM(their doors were left un-locked by Medical staff)dis-criminating against her Gender Dysphoria, by these intentional acts or omissions) within the personal knowledge of Mr. stover, ~~Practice~~ Practice Manger, whom was made aware of it by the filing of step 1 & 2 grievances, that exhusted Administrate remedies; he is more concern with towels and clothes, then he is about whether male inmates observed her naked in the open showers which doesn't have a door, (just an opening, that anyone may enter at any time, that they want to view her naked, with Breast exposed and other genitalia exposed, that that causes her to be humilatiated and degraded by such viewing, as Mr. stover is fully responsible for the infirm-ary, and it's ~~mainta~~ maintenance.  Mr. Stover personally and with delibertly indifferent to her serious medical need for single-celled status,  He was delibertely indifferent to her serious needs for safety and privacy, when the release of that information to the public can an do subjecting her to

her to intolance, physical assualt or sexual abuse, and discrim-
ination due to her Gender Dysphoria. She has been denied re-
lief, as the step 1 Resonßes addressing the issue.    He only
upholds his staff, as he is himself, bias and prejudice
toward Lesbian, bisexuals, transgender, and Gender nOn-
conforming persons.    He has Pre-knowledge as he was the resßnser
to complaints about other infirary workers violating
CMHCC's Poliçy Manual, H--61.1. (Governing the confidentialrty
of medical or mental health information,(whether oral, or
by the release of documents].    He revealed her transgender
status,(delibertely indifferent to the resultş], which
resulted in physical and sexual harassment by those inmates
to whom he revealed it to. In retaliation, for exericing
protected çonduct[petitioning the government for the
redress of her greivances filed prior to and about others
violating her right to privacy).

    g.   Plaintiff seeks the expungment of the denial of her
disciplinary, which an inmate attacked the plaintiff on 02
/08/2020.   Plaintiff filed a step 1 & 2 grievances exhustiong
her administrative remedies.   She was denied relief at both levels(
for being the victim of assualt)(Physically), and in which
Sgt campbell and Mrs. Sanders delayed and watched the in-
mate physically assault her causing serious injury to her
person.(and again she was physically attacked by another
inmate, whom both used gender epitahs(calling her a Bitch the
first time and PUNK, BITCH, AND FAGGOTT the second time).

-- 28 --

53. Defendants UTMB and TDCJ violated the ADA/ADAAA, by failing to provide her the aforementioned reasonable accommodations.

54. None of Ms. Noe's requested accommodations "would materially impair the safe and efficient operation of the program, service, or activities, present a safety hazard to the individuals or staff, threatened the security of the correctional institution/facility. "

55. Nor would any of Ms. Noe's requested accommoations " fundamentally alter the nature of [any] services, programs, or activity." 28 C. F. R. §35.130(b)(7).

56. Defendants' actions and failure to accommodate Ms. Noe's attempts to alleviate the stresses caused by her Gender Dysphoria have cause Ms. Noe to suffer from depression, anxiety, and suffer strong urges to self-castrate, or suicide, (sometimes these urges become so overwhelming that she has to ask for help), from mental health staff. As a direct result or proximate casual connection, to the conduct of Defendants and their gender clinic staff and TDCJ's Staff, whom acquised in those acts and the step 2 resonses denying any accommodations to plaintiff, (whom on information and belief, after reasonable investigation, is empowered to grant the releif requested by plaintiff). Defendant Linthicum, is the highest delgated authority in the greivance process for TDCJ to grant the requested releif to be accommodated by the greivances (second level) for medicial complaints) from the denial\and delay of treatments, for her serious medical real, and

-- 29 -  -

disability; and, impaired Ms. 's ability to participate in basic
Life activities.

57.  Plaintiff's major life activities are impaired
by the Reproduction[inferitality], the endcrine system[ causes
physical changes in the brain due to cross-sex horomes in the
gestation period], ability to care for oneself[lifetime medication],
abilities to socially interact with others[intolerance, discr-
imination because of her transgender status, female gender
identity].  These impairments are substantial and have a
physical cause, under the clearly established law.  Plaintiff
is a qualified individual under The ADA/ADA AMenment Act of 2008,
due to intentional discrimination / or failure to accommo-
dation for the basis of her disability.[Gender Dysphoria].


### COUNT TWO
### ( REHABILITATION ACT- -DISCRIMINATION/Failure To Accommodate)
### ( Defendants's UTMB AND TDCJ )

58.  Ms.  Noe incorporates by reference the preceding paragr-
aphs in the complaint as fully set forth herein.

59.  Defendants' violated the Rehabilitation Act of 1973,
29 U.S.C. §§701 et seq.  , by discriminating against Ms. Noe on the
basis of her disability.

60.  Defendants discriminatory actions and failure to
accommodate Ms. Noe's attempts to alleviate the stresses caused
Ms. Noe to suffer from Depression, anxiety, strong urges to self-

castrate or suicide; and, have impaired Ms. Noe's ability
to participate in basic life activities.  Defendants' acts in
violation of the Reabilitation Act include:

     a.  Refusing her medicial ~~cautions~~ evaluations by trained and
experienced professionals with intersex, , lesbian, Bisexual,
Transgender, and gender non-conforming persons as reccomended
by WPATH.gov/Standard of Care, (SOC.),being Dr. Gordon, and
with other physicans.  Nurse Practioner-provider claimed in the
last interview(EXAM)(six month review,) she refused to perform
each time she seen plaintiff, excepted the last, then she
said. "She could do the evaluations,but each time that plaintiff
was seen, Ms. Dozier, ~~Ms. Dozier~~, she refused to exercise that
discretion saying. "That TDCJ will not pay for this."  (an ac-
ception to the hearsay rule is when you are not trying to prove
the truth of the matter asserted, , but only that it was said.).
She also refued referrals her to physicans as recommeded by
WPATH.org's SOC.  See exhibit 7, Attached to Appendix One.

     b.  Refusing to transfer the plaintiff, or to put her ~~him~~ HOH
in "safekeeping" in general population.  This denial was by
Dana Sullivan, Major, and the assistant Warden of Pack unit, the
other times.  They initialally, (in 2007), Determine her gender
by her birth sex, or genitalia.  While They claimed in Step 1
Responses.  That they made a PREA individualized evaluation, but
that was pretexual as the plaintiff was was there, and Mr.
Sullivan  did not mentioned any PREA individual, and he was only
concern  whether an immient potential attack on his person.

--31 ---

While plaintiff proved that a series of attacks occurred, (on 02/08/2020, and again on 11/06/22, and that he testified that plaintiff has been sexually assaulted by Mrs. Brown twice in 2021 and again on 2022, and by Mrs. Woodard by touching her breast in Pat-down searches (each incident they took the word of the officer over the inmates' word), each time none of the witnesses were interviewed during the investigations). Defendants' have refused transfer at Step 1 & 2 Responses, and denied requested accommodations, They refused his reasonable request for accommotions, by transferring her to a female unit, or placing her in safekeeping, or P.C.

c.   Refusing to train TDCJ staff, and employees, and contractors on how to appropriately, treat, and communicate with individuals with Gender Dysphoria.

d.   Refusing to use her chosen female name when addresses, or refering to Ms. Noe;

e.   Refusing to use female pronoun when addressing or referring to Ms. Noe;

f.   Allowing male correctional officers to perform, on a daily basis stripped searches (naked) in the front of other TDCJ;s inmates, and allowing wandering patients, whom their doors were left un-locked by medicial staff discriminating against her Gender Dysphoria, by these intentional acts and omissions, within the personal of Mr. Stover, Practice manager, whom was made aware it by filing Step 1 & 2 greivances, that exhusted adminstrative remedies; he is more concern with towels and clothing then he is about whether or not whether or not male inmates observed

her naked in the open shower which doesn't have a door,
just an opening that anyone may enter at any time want to
view her naked, with breast exposed and other genitalia exposed,
that causes her to be humilated and degraded by such viewing, as
Mr. Stover is fully responsible for the infirmary, and it's
maintenance.  Mr. Stover personally  and with deliberate indiff-
erence to her serious medical need single-celled status,
He was deliberately indifference to her serious needs for safety
and privacy, when the release of that information to the public
can do subjecting her to intolerance, physical assualt or sex-
ual abuse , and discrimination due to her gender Dysphoria.
He only uphols his staff, as he is bias and prejudice toward
lesbian, bisexuals, transgender, and gender non-conforming
persons.  He has pre-knowledge as he was the First-level
to complaints  about other infirmary  workers violating
CMHCC's Poly Manual, H-61,1 (Governing the confidentiality
of medicial or mental information, whether  oral or by the
release of documents. Mr. Stover revealed her transgender status,
deliberately indifferent to the results, which resulted in
physical and sexual harassment by those inmates to whom
her revealed it to.  In retaliation for exericeing
protected conduct [petitioning the government for
the redress of greivances filed prior to and about others
violating her rights to privacy.

      g.  Plaintiff seeks the expungment of of the denial

-- 33 --

her disciplinary, which and inmate attacked her on 02/08/2020?
Plaintiff filed a step 1 & 2, greivance exhusting her administ-
ive remedies.  She was denied relief at both levels for being
a a victim of assualts.(physically), and  in which Sgt. Camp-
bell and sanders delayed and watched the inmate physically
physically assualt her causing serious physically injuries to
her person, (and again she was physically assulted by other
inmate, both whom used gender epitahs(calling her a bitch; the
first time, and Bitch, Punk, and Faggot, the second time).

61.  Defendants' actions and failure to acommodate Ms. Noe's
attempts to alleviate the stresses caused by her Gender
Dysphoria have caused Ms. Noe to suffer from Depression,
anxeity, and strong urges to self-castrate, or suicide, HA#
have impaired her ability to participate in basic life activities.

### COUNT FOUR

(FOURTEENTH AMENDMENT OF THE U.S. Constitution--DUE PROCESS Clause)

(Defendants Collier, lumpkin, linthicum, mosises villaboso, Suullvan),Dozier
( and all UTMB's Defendants)

62.  Ms. Noe incorporates by reference the preceding para-
graphs of her Complaint as though set forth herein.

63.  The Due Process Clause of the Fourteenth Amendment
prohibits state government from depriving individuals of their
property, or liberty interests without Due Process of law.  The
Due Process Clause of the Fourteenth amendment requires, at a
minimum, that the goverment action have some rational basis.
Defendants placement, and continuing injury or tort, since that
date that reoccurres everytime plaintiff is denied reasonable

accommodations for her requests.  Defendants'placment in all-male facilities and disregard the fact that she is a woman, and has a female gender identity is irrational.  Defendants' treatment of Ms. Noe also impermissibly burdens Ms. Noe's fun- amental rights to automonomy and privacy, including her right to live as a woman and consistent with her female identity as set forth above, defendants' actions and failure to acc- ommodate her gender dysporia, and by disregarding Ms. Noe's status as a woman, and disregarding her female identity as set forth above, defendants' have violated the due process clause of the Fourteenth amendment.

64.  Defendants' actions and failure to accommodate Ms. Noe attempts to all the stresses caused by her gender dysphoria have caused by her gender dysphoria have caused Ms. Noe to suffer from Depression, anxeity, strong urges to self-castrate, and suicide when it becomes overwhelming, to her, and she must seek assistances from staff,(Ms. TSMOURIS), AND HAVE IMPAIRED Ms. Noe's ability to participate in basic life activities.

### COUNT FIVE

( 42 U.S.C. §1983  -- violation of Civil Rights)
DEFENDANTS ALL except ADA/ADAAA, REhabilition Code Defe- ndants[TDCJ and UTMB].

65.  Ms. Noe incorporates by reference the preceding para- graphs of her Complaint as though fully set forth herein.

66.  Defendants are "persons"under 42 U.S.C. §1983 who acted "under the color of state law" and deprived Ms. Noe of

rights secured by the U.S. Constitution.  Specific violations include:

a.  Refusing her medical evaluations by trained and experienced professionals with intersex, lesbian, gay, bisexuals, transgender, and gender non-comforming persons as reccommended by WPATH.ORG? Standard of care, and doctor Gordon, and other physyicans.  Ms. DOZIER, THE nurse-practrioner-provider claimed in the last interview (Exam)(six month review), she refused to provide these evaluations, or referral her to hpersons who could do the evaluations(Two trained and experienced physicans). She would say that. "TDCJ will not allow surgery services to transgender persons." (or words to that effect.  Denying her individualsized evluations,on referrals to qualified physicians, as reccomended by WPATH.org's SOC.  See exhibit 7, attached to Appendix One.

b.  Refusing to transfer the plaintiffto a female facility, or to safekeeping in general population.  This denial wasby Dana Sullivan, major and now assistant warden of Pack unit, at the other times.  They initially,(2007), Determined that her birth sex, determined her, genitalia.  While they later claimed in Step one responses.  That they made PREA determinations, but that was pretexual as the plaintiff was there, and Mr. Sullivan did not mentioned any PREA comments, as he was only concerned with wether an immanient potial attack

on his person. While plaintiff proved that a series of attacks
occurred, (on 02/08/2020, and again on 11/06/2022), and that he
testified that plaintiff had been sexually assualted by Mrs.
Brown twice in 2021 and again on 2022, and by Ms. woodard, by
touching her breast in Pat-down searches (each incident they
took the word of the officer over the inmate's word), each
time none of the witnesses were questioned during the investigation).
Defendants' have refused transfer at step 1 & 2 Responses, and
denied reasonable accommodiations; by transferring her to a female
unit., or placing her in safekeeping, or P.C.

c.  Refusing to train TDCJ staff, and employees, or con-
tractors, on how to appropriately, treat, and communicate with
gender dysphoria;

d.  Refusing to use her chosen female name when
addressing or referring to Ms. Noe;

e.  Refusing to use female pronouns when addresssing
or referring Ms. Noe;

f.  allowing male correctional officers to perform
basic stripped searches (NAKED) in the front of other TDCJ's inmates,
and allowed wandering patients, whom their doors were left
un-lockedby medical staff discriminating against her
gender dysphoria, these intentional acts and omissions, within
the personal knowledge of Mr. Stover, Practice manager, whom
was made aware of it filing step 1 & 2's grievances, that exhusted

-- 37 --

## COUNT SIX

( FIRST AMENDMENT U.S. CONSTITUTION -- FREE SPEECH)

( Defendants COLLIER, SULLIVAN AND VILLALOBOS)

68. Ms. Noe incorporates by reference the preceding paragraphs of her complaint as though fully set forth herein.

Defendants Collier, SULLIWAN, AND VILLALOBOOOS, are "persons", who acted "under clor/state law." and deprived the plaintiff of her rights secured by the U.S. Constitution. Specific violations include:

69. Defendants Sullivan, Collier, and N Villalobos deprived plaintiff of her First AMENDMENT to U.S. Const.to free speech and "Presentation" as a Women, and to have a Female gender identiy,

70. DEFENDANT Sullivan:

(a) By delibertely misgendering her by refusing to refer, or about her by her Chosen Female Name(Ms. Noe); Refusing to use female pronouns when referring to her or about her; Misgendering her by Using Male Pronouns when speaking to her or about her;

71. BRYANT COLLIER:

(a) By sending her corresponance that misGenders her, by using Male Prounouns, OFher Current legal name: Michael D. Luke Noe[granting a legal name changed due to her relioun's beliefs; And the policy of treating all Gender Dysphoria, or transgender women as males, while in TDCJ, and Discriminationg againbt against her sex, or Birth genitalia); By refusing to

38
-- -- --

Allow her access to the female commissary items allowed to non-trangender women(cis-gender woman), By having policies that are not so vague as to deny her medical and psychiatric(mental Health Dept) necessary to her presentation and transition to living fully as a women with access to Female clothing, dresses, and female items on the commissary necessary to such transition(s), By approving, acquiences in, and following customs, without regards to the medical and mental health needs of plaintiff.

72. DEFENDANTS: Villabolos:

(a) By ignoring the misgendering by his suborniates, whom violated the First Amendments Rights to "presentations" as a woman in transition(living fully as a woman), and denying her such transition[ing]by Ip&lem&ation of policies, practice or customs that discriminate against plaintiff due to her sex, or sexual orientation; By upholding his suborniates whom &&& knows, or should have &&&& known violates the U.S. Const. First Amend. under the clearly established law.

(b)by allowing, acquised in, and upholding such const. violations alleged herein;

73,Dendants Lumpkins: The denial of treatment as alleged herein violates her right to present herself as a woman, due to her gender Dysphoria and female gender identity, which is torture under the Established law(U.N.), and most common laws.


COUNT SEVEN

( Relijous land Use and Institutionalized Persons Act(RLUIPA )

( 42 U. S. C. §2000cc-1 •)

( DEFENDANTS COLLIER, LUMPKINS, SULLIVAN, VILLALOBOS)

= 74. Ms. Noe incorporates by reference the preceding paragraphs of her complaint as fully set forth herein.

Defendants' Collier, Lumpkins, Sullivan, and Villalobos violated the Religious Land Use And Institutionalized Persons Act, 42 U.S.C. §2000cc-1 et. seq., by imposing a substantial burden on the religious exerice of a person residing in or confined to an institution... unless the government demonstrate that imposition of the burden on that person--(1) is in furtherance of a compelling state governmental interest; and ₴2- ₴ the least restrictive means of furthering that compelling governmental interest" 42 U.S.C. §2000cc-1(a). The Act defines "religous exerise" broadly to include "any exerise of religious, whether or not compelled by, or central to, a system of religious belief." Id. §2000cc-5(7)(A). Plaintiff was born again in being baptisized under the pencostal faith. He submitted to a Texas District Court of Houston County, Tx., a petition to change her name for relious reasons, and it was granted in 1980. Under John 3:16, She sincerely believe that she was born again in Jesus Christ, as her savior. Plaintiff has contined in the Bible, and while she has some struggle with that Bible, and it's passages, She is lead by the Holy Ghost in striving to resolve those conflicts with her beliefs. She has filed a step 1 and 2 grievance, and it was deniel at both levels. She has written repeatedly to the State classification committe, by postage prepaid mail and she never

-- 40 --

received a response.

75.    Plaintiff has no plain, adequate, or complete remedies at law, and she has been, and continues to be subjected to irreababile, and in immedent danger to her future health and saftey.

76.    Plaintiff has been and will continue to be directly harmed or appromiately serious harmed by defendants conduct, and their acts or omissions.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Noe respectfully prays that this Court:

A.    enter judgement in favor of Ms. Noe Against Defendants on Each of the Counts this complaint;

B.    Issue injunctive relief againt defendants ordering defendants not to discrinate against Ms. Noe on the bassis of her transgender status, her gender identity, her sex, and/or disability, including, but not limited to ordering to:

(1)    Teat Ms. Noe the same as other women held by TDCJ;

(2)    Transfer ms. Noe to a Female unit in TDCJ;

(3)    Train all TDCJ's STAFF and Contractors, or TDCJ's employees; how to appropriately accomodiate, treat, and communicate with individuals with GENDER DYSPHORIA;

(4) discipline  all TDCJ's STAFF, CONTRACTORS, OR TDCJ EMPLOYEES Who fail to appropiately treat, and Accomodiate a communicate with individuals with Grnder Dysphoria;

(5)   Refer to Ms. Noe by her Chosen name, including on
her ID card;

(6)   Use only female pronouns when speaking to or about
Ms. Noe;

(7)   Only allow strip seaches of Ms. Noe to be conducted by
female correctional officers, never male officers;

(8)   Provide Ms. Noe a separte shower time for her "privacy"
shower without the presence of men, and with a shower curtain
that adequately covers her; and

(9)   Plaintiff seeks expungement  of the deniel of her disci-
plinary of her assualt on 02/08/2020, in which she filed a
step 1 and 2 greivances , which both where denied on the merits,
in this incident; plaintiff filed a complaint on the inmate,
to this hate crime, which used used gender epitahs  and slang
(calling her a bitch, faggot).  When the incident had occurred
but the disciplinary was never expunged, even throught i explained
I was attacked while Sgt Campbell and ms. sanders delayed and
watched until the inmate struck her.  Inmate W. Porter witnessed
and gave a statement that the other inmate had struck me first.
She exhaustaed all available remedies.  Inmate of the second
attack, had attacked the unit psychologists Ms. Tasmouris.

(10)   Plaintiff sought as a reasonable accomodiateion to
be transbrted by van or small BUS directly to and directly from
the hospital back to her assigned unit

C.  Award Ms. Noe Reasonable costs and expenses of this action;

D.  Award her ~~nominal~~ damages against each Defenant of $1.00;

E.  For ADA/ADAAA, and Section 504 of the Rehabilitation Act of 1973, For any conduct prove to be Intented to discriminate on the basis of her Disability.

F.  Award reasonable attorney fees under 42 U.S.C. § 1983 and any other applicable law; and

G.  Grant  such other and further relief as this Court con-siders just, equitable, or proper.

DATED: ~~May~~ 08, 2023.

RESPECTFULLY SUBMMIED,

Herbert Darrell Hay,  24000 Wallace Pak Rd
#263672  /  PACK UNIT
NAVASOTA, TX77868-456700

IN PRO SE


VERIFICATION OF COMPLAINT

I Herbert Darrell Hay, Declare under the penalty Of perjury that those statements are true and correct.  Excuted on This 27 Day of ~~May~~ Jene , 2023.  28 U.S.C. §1746.

Herbert D. Hay #263672
24000 Wallace Park Rd, (Pack Unit)
NAVASOTA, TX 77868-456700
In Pro Se

-- 43. --